IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 1:22-CV-00193-KDB-DCK

| | |
|---|---|
| GOBLE MCGUIRE, JR., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Goble McGuire, Jr.'s Motion for Summary Judgment (Doc. No. 13) and Defendant's Motion for Summary Judgment (Doc. No. 17). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision denying his application for disability insurance benefits under the Social Security Act.

Having reviewed and considered the parties' briefs, the administrative record, and the applicable authority, and for the reasons set forth below, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment will be **DENIED**; Defendant's Motion for Summary Judgment will be **GRANTED**; and the Commissioner's decision **AFFIRMED**.

**I. BACKGROUND**

On May 17, 2012, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning August 17, 2008. (Tr. 148-149). Plaintiff was last insured for Title II benefits on December 31, 2009. (Tr. 1387). Plaintiff's application was denied on its first review and upon reconsideration. (Tr. 122-133). On November 13, 2020, the

Appeals Council remanded the case and directed the ALJ ("Administrative Law Judge") to resolve an inconsistency between the jobs identified by the Vocational Expert and the residual functional capacity ("RFC") in its prior decision. (Tr. 1506-1507). After conducting a further telephone hearing on November 18, 2021, ALJ Jerry W. Peace denied Plaintiff's application in a decision dated December 8, 2021. (Tr. 1385-1396). The Appeals Council denied Plaintiff's request for review and the ALJ's decision now stands as the final decision of the Commissioner. (Tr. 1374-1378). Plaintiff has timely requested judicial review under 42 U.S.C § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration ("SSA") to determine whether Mr. McGuire was disabled under the law during the relevant period.[1] At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date and through the date last insured (20 CFR 404.1571, et seq., and 416.971, et seq). At step two, the ALJ found that he had the following severe impairments: spine disorder, carpal tunnel syndrome, intellectual disorder, and depression. (20 CFR 404.1520(c) and 416.920(c)). (Tr. 1387). However, at step three, the ALJ found that none of Plaintiff's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 1399).

---

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but under step five the Commissioner must prove the claimant can perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Before proceeding to step four, the ALJ determined that Mr. McGuire had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except that he could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. He could stand or walk for approximately 6 hours in an 8-hour workday and sit for approximately 6 hours in an 8-hour workday with normal breaks. He could never climb ladders, ropes, or scaffolds. He could never occasionally climb ramps or stairs, stoop, crouch, kneel, or crawl. He was limited to frequent bilateral handling and fingering. He was limited to frequent use of moving machinery and frequent exposure to unprotected heights. He was limited to simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production requirements, involving only simple, work-related decisions, and with few, if any, workplace changes. He could learn simple vocational tasks and complete them at an adequate pace with persistence in a vocational setting. He could perform simple tasks for 2-hour blocks of time with normal rest breaks during an 8-hour workday, with only occasional interaction with the public.

(Tr. 1391). At step four, the ALJ found that Plaintiff could not perform his past relevant work as a welder (DOT Code 819.384-010), medium with an SVP of 6 required by SSR 82-62. (Tr. 1395). However, at step five, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform based on his age, education, work experience, and RFC. (Tr. 1395-96). These jobs include: (1) Inserting Machine Operator (DOT Code 208.686-018), light with an SVP and reasoning level of 2; (2) Folder (DOT Code 369.687-018), light with an SVP and reasoning level of 2; and (3) Foiling-Machine Operator (DOT Code 692.685-087), light with an SVP of 2 and a reasoning level of 1. (Tr. 1395-1396).

Thus, the ALJ found that Plaintiff was not disabled under the Social Security Act from August 17, 2008, through December 31, 2009, the date Plaintiff was last insured. (Tr. 1396).

### III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a

physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, ––– U.S. –––, 139 S. Ct. 1148, 1151-52, 203 L.Ed.2d 504 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 1154 (internal quotation marks and alteration omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). Accordingly, this Court does not review a final decision of the Commissioner *de novo, Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Shinaberry*, 952 F.3d at 120 (internal citations omitted); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting

evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id*. (internal quotation marks omitted); *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome— so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, in all cases the Court must always ensure that proper legal standards are being followed.

## IV. DISCUSSION

Plaintiff makes two arguments against the ALJ's conclusion that he is not disabled. First, Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ failed to evaluate Plaintiff's alleged intellectual and mental health limitations. Specifically, Plaintiff contends that the ALJ failed to properly weigh the adverse medical opinion of Plaintiff's clinical psychological examiner, Dr. Deborah Barnett, and failed to evaluate testing data and school records showing lifelong intellectual functional limitations. Second, Plaintiff contends that the ALJ failed to evaluate the testimony regarding the continued chronic pain experienced by Plaintiff.

With respect to the Plaintiff's first argument, the Court finds that the ALJ did not err in evaluating the testing data that Dr. Barnett provided. When determining a claimant's disability status, the ALJ is required to consider the medical opinions of the claimant's treating physicians. *See* 20 C.F.R. § 404.1527(b) ("[W]e will always consider the medical opinions in [a claimant's]

case record."). Section 404.1527(c) establishes the "treating physician rule,"[2] whereby the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *See, e.g., Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 106–07 (4th Cir. 2020) (applying the treating physician rule); *Brown v. Comm'r of Soc. Sec.*, 873 F.3d 251, 255–56 (4th Cir. 2017) (same). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). In such cases, the ALJ must then consider each of the factors laid out by 20 C.F.R. § 404.1527(c)(2) in determining the proper weight of the opinion.[3] *Dowling v. Comm'r of Soc. Sec.*, 986 F.3d 377, 385 (4th Cir. 2021). While the ALJ is not required to set forth a detailed factor-by-factor analysis, it must be clear from the decision that the ALJ meaningfully considered each of the factors before determining how much weight to give the opinion. *Id.*

In discussing Dr. Barnett's opinion, the ALJ stated:

> I give Dr. Barnett's opinions little weight, as they are inconsistent with the record during the relevant period. Dr. Barnett did not see the claimant prior to January 2019 or at any time during the period at issue. She relied on his subjective reports

---

[2] For claims filed with the SSA after March 27, 2017, the Treating Physician Rule no longer applies. Plaintiff's claim was filed on May 17, 2012; therefore, the Treating Physical Rule applies here. *See* 20 C.F.R. § 404.1527; *Brown v. Comm'r of Soc. Sec.*, 873 F.3d 251, 255 (4th Cir. 2017).
[3] In evaluating a medical opinion, the ALJ is instructed to consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability, i.e., the extent to which the treating physician presents relevant evidence to support the medical opinion; (4) consistency, i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to issues related to his or her area of specialty; and (6) any other factors raised by the parties which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c)(2)(i)–(6).

> of his history of symptoms, test results, and school records[4], but she gave no indication that she reviewed any medical records relevant to the period at issue. During the relevant period, the claimant's primary care provider, Dr. Pumilia, noted that his depression was well controlled with Sertraline, and that his mood was good. Thus, I give Dr. Barnett's opinions little weight.

(Tr. At 1394). The ALJ also evaluated the relevant treatment notes describing Plaintiff's mental impairments, including his depressive symptoms, during the relevant time period. (Tr. 1393-1394). In short, the ALJ fairly articulated why he did not find Dr. Barnett's opinions persuasive by pointing to notes from medical providers and evaluators which tended to show a positive trend of improvement in Plaintiff's depression. *See id.*

Additionally, it was reasonable for the ALJ to give more weight to the opinions of Plaintiff's primary care provider, Dr. Paul Pumilia, M.D. Dr. Pumilia treated Plaintiff during 2008, which is the relevant time period prior to the date last insured. (Tr. 1392). In contrast, Dr. Barnett did not see Plaintiff until January 2019. (Tr. 1394). Accordingly, the Court finds that the ALJ properly considered the medical evidence and, in fact, went into substantial detail to point out discrepancies between the medical opinions for the relevant time period and those after the relevant period.

Plaintiff also argues that the ALJ failed to evaluate the testing data that showed lifelong intellectual functional limitations. However, the Court finds that the ALJ addressed what appeared to be a history of intellectual disorder from Plaintiff's education records. (Tr. 1393). In doing so,

---

[4] The ALJ describes school records as subjective, but the Court questions that characterization. A report is subjective when it is "based on an individual's perceptions, feelings, or intentions, as opposed to externally verifiable phenomena." *Subjective*, BLACK'S LAW DICTIONARY (11th ed. 2019). The school records at issue do not reflect "feelings" and the like; rather the records present the history of Plaintiff's school experience. However, whether the school records are "subjective", or "objective" is not determinative. As discussed above, the Court agrees that the ALJ has adequately explained why he believed he accorded Dr. Barnett's opinion little weight (because it was not directly relevant to the time period at issue).

the ALJ noted that "there was no evidence of attention or concentration deficits during exams prior to December 31, 2009, but [rather how] his academic records show he obtained As, Bs, Cs, and Ds (14E)." (Tr. 1393). The ALJ took this into consideration and found that Plaintiff had a moderate limitation in concentrating, persisting or maintaining pace, and accounted for this mental limitation in the RFC and the hypothetical question posted to the vocational expert. (Tr. 1391, 1455-1457). Thus, the Court finds that the ALJ adequately evaluated Plaintiff's history of an intellectual disorder from his education records and accounted for the limitation.

Turning to Plaintiff's second argument, the Court finds that the ALJ properly considered Plaintiff's chronic back pain. Plaintiff relies on *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), but *Mascio* does not require a remand. Unlike in *Mascio*, the ALJ here adequately explained how he reached the limitations in his RFC finding. (Tr. 1394). The ALJ considered both Plaintiff's physical and mental impairment limitations and reasoned that "his ability to independently carry out his activities of daily living, the conservative treatment during the relevant period, and the control of his symptoms with medication indicate that (sic) could have performed work within these limitations." (Tr. 1394). In doing so, the ALJ evaluated all of the evidence for the relevant time period, which revealed that Plaintiff "had done very well in terms of back pain" and was "prescribed only conservative treatment" by Dr. Leland Berkwits, M.D., of the Center for Spine and Joint Wellness. (Tr. 1393). The ALJ further developed the record by explaining the inconsistencies found between Plaintiff's testimony and the 2009 physical exam and MRI done by Dr. Berkwtis, which led to the finding that further interventional treatment would make Plaintiff's symptoms worse. (Tr. 1392-1393). Accordingly, the Court finds that the ALJ adequately supported his decision to attribute less weight to Plaintiff's statements about the intensity, persistence, and limiting effects of his back pain and symptoms during the relevant time period.

In sum, after a careful review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and that the ALJ built "an accurate and logical bridge from the evidence to [his] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

## IV. ORDER

**NOW THEREFORE IT IS ORDERED:**

Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. No. 17) is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED ADJUDGED AND DECREED.**

Signed: June 21, 2023

Kenneth D. Bell
United States District Judge